[Civ. No. 13033. First Dist., Div. Two. Oct. 29, 1946.]

ALICE G. REILLY, Respondent, v. CALIFORNIA STREET CABLE RAILROAD COMPANY (a Corporation) et al., Appellants.

622

Cooley, Crowley, Gaither & Dana and Bronson, Bronson & McKinnon for Appellants.

M. Mitchell Bourquin and John J. Healy, Jr., for Respondent.

GOODELL, J.—The respondent sued the appellants cable company and Grace Brothers and the latter's driver, for concurrent negligence resulting in a collision in which respondent was injured. She recovered a verdict of $11,000 against all defendants, and from the judgment entered thereon they appeal.

On June 29, 1943, shortly after 9 a. m. respondent was a passenger in the front seat on the right-hand side of the open, forward section of a cable car descending easterly on California Street between Grant Avenue and Kearny Street, in San Francisco, where the grade is 13½ per cent. A truck and trailer of Grace Brothers, driven by appellant Ward, was traveling southerly on Kearny, approaching California. It drove into the intersection and the cable car, coming down the hill, collided with the trailer. The impact threw the respondent from the car to the street.

A stop sign had been installed by the city authorities at each of the four entrances to the intersection.

### The Grace Bros. Brewing Company's Appeal.

Grace Brothers' first point is that the cable company's negligence was the sole proximate cause of the accident. This is but another way of saying that Grace Brothers were not

negligent, or, if they were, their negligence was not a proximate cause of the collision.

The verdict of course implied a finding that the truck, as well as the cable car, was negligent.

 Appellant claims that the cable company did not discharge its duty as a carrier, of "utmost care and diligence" to its passenger (Civ. Code, § 2100) and could not have done so while operating its antiquated equipment; further, that the cable car "could not blindly and negligently proceed into the intersection on the assumption that the truck would give way." These arguments do not touch the point, for however negligent the cable company may have been, the question now presented is simply with respect to Grace Brothers' negligence. Whether the jury found that the cable company failed in its highest duty to its passenger or simply failed to use ordinary care, is of no consequence *because the jury in any event fastened liability on the cable company.* "In such a situation appellate courts will not look behind the verdict in an attempt to ascertain the theory adopted by the jury." (*Schultheiss* v. *Los Angeles Ry. Corp.,* 11 Cal.App.2d 525, 528 [54 P.2d 49].) That, however, does not help Grace Brothers, for even though the negligence of one defendant may be greater than that of another (a question upon which we are not called upon to pass), the injured third party may recover from both or either. (*Smith* v. *Schwartz,* 14 Cal.App.2d 160, 164 [57 P. 2d 1386].) The case just cited holds that "in order for one driver to establish that the independent negligence of the other was the sole proximate cause of the collision, it must appear that his own negligence was so disconnected in time and nature as to make it plain that the damage occasioned was in no way the natural or probable consequence of the negligence of him thus seeking to be relieved from liability." It is apparent from the verdict against both corporate defendants that Grace Brothers did not convince the jury on that question of fact. In the same case it is said, "the question of whether the negligence of one driver or both was the proximate cause of the collision is one of fact to be determined by the jury, . . . and if there be evidence to support such determination, it cannot be disturbed on appeal. [Citations.]" (See, also, *Day* v. *General Petroleum Corp.,* 32 Cal.App.2d 220, 235, 236 [89 P.2d 718], and *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 602 [110 P.2d 1044].)

 There is ample evidence to hold Grace Brothers. It is

sufficient to refer to the testimony of several witnesses who saw Ward drive through the stop sign and keep on going directly into the path of the cable car—some said as fast as 10 to 15 miles an hour. Granting that Ward testified he stopped or was "barely rolling," the jury could have believed that he did not stop at all, which, as the jury was instructed, was negligence as matter of law.

■ Grace Brothers' second point is that prejudicial error was committed in the instructions to the jury. At the request of the cable company the jury was instructed that "it is the duty of the driver of a motor vehicle who is approaching and about to cross the tracks of a moving street car *to use reasonable care to yield the right of way to such street car when it is reasonably necessary to do so in order to avoid a collision* with said street car. The right of way means the right to the immediate use of the highway." (Emphasis ours.) It is difficult to see how this instruction conferred, as counsel claim it did, "an absolute and preeminent right of way upon the cable car" or subordinated the truck's rights. This language finds direct support in *Arnold* v. *San Francisco-Oakland T. Rys.*, 175 Cal. 1, 5 [164 P. 798], where it is said: " 'A street-car cannot go upon the street except upon its rails and hence it has the better right to that space, *to which others must yield when necessary*'. [Citations.] It was the duty of Arnold, upon approaching the crossing, to give way to a car of the defendant which was about to pass at the same time, *if necessary to avoid a collision,* since he could give way while it could not. . . ." (Emphasis ours.) (See, also, *New York L. Oil Co.* v. *United Railroads,* 191 Cal. 96, 100 [215 P. 72].)

*Primm* v. *Market Street Ry. Co.,* 56 Cal.App.2d 480 [132 P.2d 482] is relied on in this attack but the instruction there held to be "not entirely correct as applied to intersections" was so much stronger than that given in this case that it warrants no comparison at all. It told the jury—which the instruction now discussed did not—that "A street car has from necessity a right of way . . . paramount to that of persons and ordinary vehicles, though this superior right is not exclusive. . . ." On the other hand it was said in *Aungst* v. *Central California Traction Co.,* 115 Cal.App. 113, 116 [1 P. 2d 56], citing *O'Connor* v. *United R. R.,* 168 Cal. 43 [141 P. 809], that streetcars "have no absolute or pre-eminent right of way over intersections. . . ." In the Primm case it was said, "The rule applicable to the facts of this case is set forth

in *Wright* v. *Los Angeles Ry. Corp.*, 14 Cal.2d 168, 173 [93 P. 2d 135]; '. . . it is generally conceded that, on approaching an intersecting street, the duties of a streetcar motorman and those of the driver of an automobile which is about to cross the streetcar tracks at such intersection, are reciprocal and that each is required to approach the intersection with due regard for the rights of the other [citations]'.'' ██ In an instruction given at the plaintiff's request the jury was told that ''While the defendant, . . . Railroad Company, in this case had the right to operate its car along the track maintained by said defendant on California Street and across Kearny . . ., it was the duty of said defendant to exercise ordinary care in the operation thereof to avoid collision with other persons and vehicles using the public streets. . . .'' That instruction, while not speaking of *reciprocal* rights at intersections, conveyed to the jury the same thought as that expressed in the Wright case. Grace Brothers attribute to that instruction the same vice as that attributed to the one first criticized, in that it emphasized the idea of an absolute right at an intersection and ''confirmed the error of the instruction earlier discussed and . . . enhanced the prejudice.'' But it is difficult to see how it can be attacked on that or any other ground. The right of the cable company to operate cannot be questioned, and the remainder of the instruction correctly stated the cable company's duty toward other vehicles and pedestrians (see *Shipley* v. *San Diego Elec. Ry. Co.*, 106 Cal.App. 659, 661 [289 P. 662]).

██ It is claimed, further, that the instruction just quoted was ''misleading and confusing in defining the degree of care with which the cable car company was charged.'' The instruction only pretended, obviously, to state the duty owed by the cable company to ''other persons and vehicles using the public streets,'' not that owed to its passengers. In another instruction, of which Grace Brothers also complain, the jury was told that the cable company ''was under the duty of exercising the highest degree of care to avoid any injury to the plaintiff.'' The charge of confusing the jury is not made out because the jury, apparently, was not confused. ██ As said in discussing Grace Brothers' first point, the jury brought in a verdict against the cable company and whether it was based on a failure to use the highest degree of care or to use only ordinary care does not matter. Grace Brothers are not in a position to complain on any ground, of the instruction which

stated the carrier's duty to its passenger. (See *McKinnon* v. *United Railroads,* 55 Cal.App. 96, 101 [203 P. 122].)

The brewing company (but not the cable company) claims also that the award of $11,000 was excessive. The trial judge was called on to exercise his discretion on this question and his denial of a new trial indicates that he, with power to "consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just," considered the verdict not excessive. "Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury.' [citations]." *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713, 715 [106 P. 83]; *Lahti* v. *McMenamin,* 204 Cal. 415, 419 [268 P. 644]; *Mudrick* v. *Market Street Ry. Co.,* 11 Cal.2d 724, 735 [81 P.2d 950, 118 A.L.R. 533].

Actual damages in this case came to $2,130.90.

At the time of her injury respondent was 49, unmarried, and was working as an office secretary. Her injuries consisted of a fracture of the sacrum; a fracture, with crushing, of the sixth dorsal spine, and the fracture of two ribs (on a plane with the crushed vertebra). She also suffered contusions. She was confined to the hospital for one month. She wore a brace for three months and when she attempted to get along without it had to resume its use, finally discarding it on October 18, 1943. Prior to the accident she was well and was able to work a full day, but when she returned to work, after three and a half months absence, she was able to work only from 10:30 a. m. until about 4 p. m., and, at that, found it difficult to keep going until 4. She testified to more or less constant pain in the sacral region from which she got relief by standing, and pain between her shoulders (the sixth dorsal spine is between the shoulders) which pains kept her awake nights, necessitating the taking of sedatives. She had been under the constant care of her doctor up to the time of trial and had undergone osteopathic treatment twice a week for 14 months by a specialist. She had had to give up all her numerous former social activities, in order to conserve her strength so that she could carry on her daily work, even at shortened hours. Respondent's doctor, who had known her for some years, testified to a marked change in her appearance and nervous condition as a result of the accident. Re-

spondent testified to pains in her legs and back at times, and to severe headaches, and the pains in the back were worse when she was working at the office under pressure. In her doctor's opinion some of her symptoms would be permanent. Respondent testified that she worried as to the possible future impairment of her earning power.

Counsel for appellant concede that there is no arbitrary standard by which claimed excessiveness can be tested, and cite no cases involving damage awards for similar injuries. However, we have found a case (*McNown* v. *Pacific Freight Lines,* 50 Cal.App.2d 221, 227 [122 P.2d 582]) where a woman plaintiff six years younger than respondent suffered a dislocation of her coccyx, and was confined to the hospital one week less than she. The injuries in the instant case seem to be considerably more serious than those in that case. An award by the jury of $10,000 was attacked as excessive but held to be not so. We appreciate that while other somewhat similar cases furnish no precise or accurate bases for comparison, they are nevertheless continually resorted to by appellate courts as of some guidance. (E. g. *Ringis* v. *Otting,* 63 Cal. App.2d 88, 92 [146 P.2d 421]. See *Power* v. *California St. Cable R. Co.,* 52 Cal.App.2d 289, 293 [126 P.2d 4].)

In view of the respondent's injuries, of the doctor's testimony as to the probability of permanent trouble, and of the uncertainty as to the continued capacity of the respondent to work, we cannot say that the award was excessive. The respondent is an unmarried woman, entirely dependent on herself for support. The doctor has testified to the marked change in her appearance and nervous condition as a consequence of this accident. When in addition to this consideration is given to the elements of pain and suffering and the complete loss of social life, the award does not suggest passion or prejudice.

## The Cable Company's Appeal.

The principal complaint of the cable company is that the jury received the impression from the instructions that the cable car was bound, just as were motor vehicles, to stop at the nearest or westerly line of Kearny Street because of the stop sign facing west.

The jury was instructed that the Vehicle Code provides that it is "lawful for local authorities of this City and County to designate any intersection under its exclusive jurisdiction

as a stop intersection and erect stop signs at one or more entrances thereto.''

We have already seen that there were stop signs at all four entrances to this intersection. That fact having been proved, the jury, in the absence of an appropriate instruction, might well have received the impression that the stop sign facing west obligated the cable car to stop on the westerly line of Kearny just as much as the stop sign facing north obligated the truck to stop on the northerly line of California. But by an instruction proposed by the cable company the jury was told ''that Section 577 of the Vehicle Code . . . provided as follows:

'' 'The driver of any vehicle upon approaching any entrance of the highway or intersection signposted with a stop sign as provided in this code . . . shall stop before entering the nearest crosswalk, or if none, then on the limit line marked otherwise, before entering such highway or intersection.' '' And further:

''You are instructed that Section 31 of the Vehicle Code . . . provided as follows:

''. . . 'A vehicle is a device in, upon or by which any person or property is or may be propelled, moved or drawn upon a highway excepting a device moved by human power or used exclusively upon stationary rails or tracks.' ''

In addition to the instructions proposed by the cable company quoted above, dealing with sections 577 and 31, the same defendant also tendered the following, which were refused:

''You are instructed that Sec. 457 of the Vehicle Code . . . provided as follows:

'' '457. *Scope of Division.* The provisions of this division, except those of Chapters 4 and 5, relating to the operation of vehicles refer exclusively to the operation of vehicles upon the highways, unless a different place is specifically referred to in a given section. The provisions of Chapters 4 and 5 of this division apply throughout the State unless otherwise indicated'.''

''In connection with Sections 552 and 577 of the Vehicle Code which I have just read to you, I instruct you that *such sections do not apply to the operator of a cable railroad in approaching a through highway. These sections apply to the operators of automobiles and trucks and similar vehicles but have no application to the operator of a cable car such as*

*we have in this case and which moves exclusively upon stationary rails or tracks."*

That part of the last proposed (and rejected) instruction which we have emphasized will be seen to be an amplification of the instruction based on section 31, which *was* given, the language of which in defining a "vehicle" excepts *"a device . . . used exclusively upon stationary rails or tracks."*

It is the contention of the cable company that the mere giving of the language of section 577 and section 31 did not fully and fairly instruct the jury on the subject involved. Counsel say "A close analysis and study of the sections reveals to the trained mind that the operation of a cable car was not bound by the terms of section 577. The matter, however, is not clear without study." They invoke the rule that in many instances the mere language of a code section may require further instructions for clarification, citing *People* v. *Adams,* 79 Cal.App. 373, 377 [249 P. 536]; *Formosa* v. *Yellow Cab Co.,* 31 Cal.App.2d 77 [87 P.2d 716], and *Pemberton* v. *Arny,* 42 Cal.App. 19 [183 P. 356]. In all three cases the rule is discussed but in none of them is it held that the court erred. *People* v. *Adams* was a forgery case and it was held that the state of the record did not warrant the giving of the rejected instruction. In *Pemberton* v. *Arny,* the court instructed in the language of the Motor Vehicle Act and on appeal it was held that no interpretation or enlargement of that language was required. In the Formosa case, just as in this case, the court gave instructions in the language of the vehicle code and refused others in amplification thereof. There the court (31 Cal.App.2d 77, 84) in approving such action had this to say: "The Motor Vehicle Act and its successor the Vehicle Code were passed by the legislature primarily for the purpose of guiding the motoring public. The language is plain and concise, and not couched in legal verbiage that is baffling to a juror. Under such circumstances, the giving of explanatory, or as they are here termed, specific instructions as to the legal effect of the wording used, is not mandatory upon the trial court. Instructions based on code provisions should follow the wording of the particular section involved, and when confusing or couched in legal terms should be explained, but when the language of the section is unambiguous and clearly stated without legal embellishments, no explanatory instructions are necessary. It is incumbent

upon the trial court to determine whether or not a code section should be explained.''

''It should be unnecessary to say that there is no law requiring the court to repeat an instruction once given or to amplify unnecessarily upon propositions which to a jury of ordinary intelligence would be apparent from the instructions given.'' (*Sharpless* v. *Pantages,* 178 Cal. 122, 125 [172 P. 384].)

There is a strong reason why, in our opinion, no explanation or amplification was needed and that is, that the reading of the language of section 31 with its exception of devices ''used exclusively upon stationary rails or tracks'' was immediately followed by this, ''You are instructed that if you find from the preponderance of the evidence that defendant, Cecil M. Ward failed to bring his truck to a stop before entering the nearest crosswalk of the intersection of California and Kearny Streets, that then, if you so find said defendant was guilty of negligence as a matter of law.''

This applied the general rule theretofore read to the jury, to Ward and his truck incisively and with particularity. The fact that no similar instruction was fitted to the cable company singled out the truck alone as subject to obedience to stop signs and conspicuously left out the cable car.

Section 457 of the Vehicle Code does not deal with physical factors such for example as speed, turns or signals, but with the application of certain chapters of the code. Its language was designed obviously as a guide to lawyers and judges rather than as laying down a rule of action or conduct for the motoring public. It could not have enlightened the jury on any phase of this case, and might easily have led to confusion and perplexity. The remainder of the instruction, as already noted, was a mere expansion of what the jury had been already told.

Section 552 had no place in these instructions. It reads: ''Vehicle Entering Through Highway. The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the

through highway shall yield the right of way to the vehicle so about to enter or cross the through highway.''

Section 552 obviously relates to the approach of two *motor* vehicles. Counsel for the cable company, then, are not altogether consistent in urging that this instruction should have been given, for, as we have seen, they strenuously urge—and properly so—that the cable car is not a ''vehicle'' within the purview of the code. It was not at all applicable.

The case of *Adrian* v. *Guyette,* 14 Cal.App.2d 493 [58 P.2d 988] cited by the cable company is not comparable. There the court left to the jury several questions of law. Here the court read to the jury without change an instruction composed by the cable company's counsel, and simply declined to give a further instruction which was repetitive in part and which otherwise dealt only with a matter of statutory construction which might conceivably have been ''baffling to a juror'' (Formosa case, *supra*).

We find no error in the record.

The cable company appeals, also, from the order denying a new trial, which is not an appealable order. (Code Civ. Proc., § 963; 2 McK. Dig. Recompiled, p. 161, § 74.) On an appeal from the judgment itself such order is reviewable (Code Civ. Proc., § 956; *Casner* v. *Daily News Co.,* 12 Cal. 2d 402, 404 [84 P.2d 1032]). Accordingly, that appeal is dismissed.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.