[Civ. No. 17813.   Second Dist., Div. Two.   Nov. 30, 1950.]

LOYD P. SQUIRES, Respondent, v. CITY OF LOS
ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, Ralph E. Ringwald and Edwin F. Shinn, Deputy City Attorneys, for Appellant.

Tipton & Weingand and Syril S. Tipton for Respondent.

WILSON, J.—Plaintiff brought this action for personal injuries received in a collision between his automobile and a truck belonging to defendant and operated by one of its employees in the course of his duty. From a judgment in favor of plaintiff entered upon the verdict of a jury defendant has appealed.

Van Owen Boulevard is a public highway extending east and west in San Fernando Valley within the corporate limits of the city of Los Angeles, and is intersected by Corbin Avenue at right angles. The pavement of Van Owen is of black material 20 feet wide, in the middle of which is a painted white line; there is a 3-foot dirt shoulder on the south side of the roadway; the adjacent field is practically level with the surface of the roadway; the area is level "open country" with no

trees or buildings within a half mile west of Corbin.

The accident occurred on the south edge of Van Owen from 300 to 400 feet west of Corbin. It was dark and the weather was clear. Defendant's driver had been traveling west on Van Owen and after crossing Corbin he determined to turn around and go east on Van Owen. He turned his truck to the left, headed in a southwesterly direction and stopped with the front wheels of the truck in the field, its rear wheels on the dirt shoulder and its right rear corner extending 1½ to 3 feet into the south half of the paved portion of Van Owen. The headlights of the truck were shining southwesterly into the field. The taillight of the truck was burning; however, it was fastened to the left rear portion of the frame one or two feet underneath the truck bed and could not be seen from the west; there was a 3-inch red reflector on the right side of the truck bed about 2 inches from the rear and 3 feet from the surface of the ground. There is no evidence concerning its cleanliness.

Plaintiff was driving easterly on Van Owen. When he was a considerable distance from Corbin he observed the lights of two cars coming toward him; when he was from 600 to 900 feet west of Corbin he observed one car turn south into Corbin; the other car proceeded westerly. He continued to look in an easterly direction and saw the lights of the car that was coming toward him. He had lowered his lights onto low beam so they would not interfere with drivers meeting him. He was driving close to the center line of the 10-foot eastbound lane of the highway. He remembered seeing a car coming toward him; he "blacked out" and the next he knew was when he awakened in the Receiving Hospital.

The driver of defendant's truck testified that after one or two cars had passed him going east he began backing his truck, at which time he did not see the lights of plaintiff's car coming toward him; that after he had backed for a distance of about one foot he saw the headlights of the approaching car which was about 150 feet distant from him and he then stopped.

Plaintiff's car struck the right rear corner of the truck; the major damage commenced at the base of plaintiff's windshield and extended to the rear of the car; "the side was pretty well demolished," the right front door having been entirely torn off.

Nine months after the accident defendant's employees conducted a test at night at the point of the accident; the same truck was placed in approximately the position it occupied at

the time of the accident; the red reflector having been broken at the time of the collision was replaced by a new one in the same position; an occupant of an automobile headed easterly on Van Owen stopped with his left wheels 2 feet south of the middle line of Van Owen and with its headlights on low beam testified concerning the visibility of the truck and the reflector at various distances of 50 to 300 feet. The automobile was stationary at each point of the test and the driver was concentrating on what he could see. He did not attempt to make observation as to what could be seen when his car was traveling at 35 or 40 miles an hour. The other person engaged in the test stood on the pavement.

In its brief defendant concedes ''that all intendments and all reasonable inferences must be drawn from the evidence in support of the verdict.'' It then asks ''What inference of negligence could the jury properly draw from the evidence?'' The record provides a basis for many inferences, among them they might have inferred (1) that since the territory was ''open country'' and the roadway was unobstructed defendant's truck driver could have seen plaintiff's lights long before they came within a distance of 150 feet of the truck and before he began backing; (2) that since there is no evidence as to the condition of the reflector on the truck when the accident occurred it was not clean and gave no warning to an approaching driver; (3) that since it was admitted that the reflector used in the test was new and clean such test was not made under the conditions existing at the time of the accident; (4) that since it was to be used in the test it was of maximum efficiency; (5) that since there is no evidence as to the manner of the construction of the reflector on the truck at the time of the collision or as to whether it would reflect light from the angle at which the truck was standing it did not reflect plaintiff's lights as he approached the truck. The jury could have found and impliedly did find that the truck driver was negligent in permitting his truck to extend over the pavement of the narrow roadway, there being only 10 feet of pavement for each of the east and west lanes of travel. The jury had a right to take into consideration the fact that the driver did not move the truck forward so as to clear the roadway when he saw plaintiff's lights approaching.

From plaintiff's testimony that he saw lights of cars when he was from 600 to 900 feet from Corbin and continued easterly driving close to the center line of the street and ''blacked out'' the jury may have assumed that plaintiff was rendered

unconscious when his car collided with the truck. Since this construction is most favorable to plaintiff it must be adopted by a reviewing court.

The truck driver testified that he had floodlights on his truck and after the accident he turned them on in order to see plaintiff's body and his wrecked automobile. The jury could have inferred negligence on his part in not having turned on the floodlights so that drivers of approaching cars could see the truck. They could have inferred that before commencing to back his truck the driver did not look in a westerly direction so as to observe plaintiff's car approaching, and that had he looked he would have seen the lights of the car since the highway was unobstructed.

The shining of the headlights southwesterly into the field was not a warning to plaintiff of the presence of the truck on the highway. Plaintiff may justifiably have assumed that the truck was in the field. Such lights did not give notice to a driver that the truck was in a position where it would be struck by a car traveling on the paved portion of the street.

█ It was for the jury to determine whether the truck driver had done all that a reasonably prudent person would have done under the same or similar circumstances to avoid danger to approaching vehicles on the highway.

█ Defendant's contention that the reflector on the truck must have been clearly visible by reason of the fact that section 645 of the Vehicle Code prohibits the sale or use of reflectors except of a type approved by the Department of Motor Vehicles is without merit. The statutory restraint upon the sale and use of such an appliance is not evidence of its actual condition when in use. Furthermore, it is common knowledge and well known to any person who drives upon the public highways that not all reflectors on vehicles are clean and in a serviceable condition—in fact many may be observed that are so covered with grime as to fail entirely to accomplish the purpose for which they were designed.

█ Defendant maintains that plaintiff's failure to see the truck was negligence as a matter of law proximately causing his injury and in so doing repeats its argument with reference to the headlights of the truck shining into the vacant field, the taillight burning (although not visible to plaintiff), and the red reflector on the right side of the truck. We have already disposed of these elements.

█ Negligence and contributory negligence are questions of fact for the jury except where the evidence is such that

the trial court may declare as a matter of law that only one inference can be rationally drawn from the evidence. (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826] ; *Blank* v. *Coffin*, 20 Cal.2d 457, 460 [126 P.2d 868].) ■ In the instant case the evidence is not of the latter character and the court therefore properly permitted the jury to draw its own inferences from the evidence.

The fact that section 582* of the Vehicle Code is not applicable in this action by reason of the occurrence of the accident within incorporated territory does not of itself relieve defendant of liability. ■ The jury had a right to find the truck driver guilty of negligence in permitting his truck to extend over the paved portion of the street in the path of traffic even though in so doing he was not violating any express provision of law.

Defendant contends that the verdict for $18,825 is so excessive that it must appear to have been the result of passion and prejudice. Defendant admits special damages of $2,000. ■ The amount of money that will be adequate compensation for injuries and for incident pain and suffering rests largely within the sound discretion of the jury. ■ Such discretion will not be interfered with by a reviewing court unless it clearly appears that the award is so grossly excessive as to shock the conscience and to compel the conclusion that the verdict was the result of passion and prejudice. (*Scaletta* v. *Silva,* 52 Cal.App.2d 730, 739 [126 P.2d 898] ; *Humble* v. *Union Pac. R. R. Co.*, 90 Cal.App.2d 276, 277 [202 P.2d 791] ; *Lay* v. *Pacific Perforating Co., Ltd.*, 62 Cal.App.2d 233, 240 [144 P.2d 395] ; *Ringis* v. *Otting*, 63 Cal.App.2d 88, 92 [146 P.2d 421].) ■ Such condition does not appear in the instant action. Plaintiff was hospitalized for 18 days; he sustained a scalp wound which caused his head to ache for several days; his head was bandaged for more than four months; his neck and back are sore and stiff; his knees are stiff, causing him to limp and becoming sore when he walks far; since the accident he cannot see without glasses; he is a teacher and is unable to assist with coaching in physical education as he had done prior to the accident. He exhibited scars to the jury on his head and face. A physician testified that some of the scars are permanently discolored. Plaintiff's wife, to whom he had been married for 20 years, testified that she had noticed

*Section 582 prohibits the parking or stopping of a vehicle, with certain exceptions, upon a highway in unincorporated territory.

714

changes in his condition since the accident; the motion of his head from side to side is limited; he uses a hot pad on his neck and back for a considerable time during the night. There is nothing in the record to indicate that the damages awarded are excessive or that the verdict was a result of passion or prejudice on the part of the jury. Moreover, since the value of the dollar is measured by its purchasing power, in view of the current economic conditions and of the depreciated value of money the verdict cannot be criticized as being excessive. (*Butler* v. *Allen*, 73 Cal.App.2d 866, 870 [167 P.2d 488]; *Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 187 [195 P.2d 427]; *Moran* v. *Zenith Oil Co.*, 92 Cal.App.2d 236, 244 [206 P.2d 679].)

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied December 19, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 25, 1951.