[Civ. No. 7951. Third Dist. Feb. 14, 1952.]

NILO BAZZOLI, Respondent, v. NANCE'S SANITARIUM, INCORPORATED, Appellant.

234

Geary, Spridgen & Moskowitz for Appellant.

Brown, Smith & Ferguson and King & Ghidella for Respondent.

SCHOTTKY, J. pro tem.—Respondent, admittedly a business invitee on premises owned and operated by appellant corporation, suffered personal injuries when his foot went through the floor and was plunged into a tank of hot water beneath it. He commenced an action for damages against appellant, and a jury rendered a verdict in his favor for

the sum of $15,000. This appeal is from the judgment entered upon the verdict.

In arguing for a reversal of the judgment appellant makes four main contentions: (1) The evidence is insufficient to support a finding of negligence in appellant; (2) The trial court erred in applying the doctrine of "res ipsa loquitur" to the evidence in this case, and in instructing the jury thereupon; (3) The language of the res ipsa loquitur instructions given did not state the law, or was otherwise defective, to appellant's prejudice; (4) The amount of damages awarded to respondent is excessive.

Before discussing these contentions we shall summarize briefly the factual situation as disclosed by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of respondent and all reasonable inferences must be indulged in to support the verdict.

The defendant and appellant, Nance's Sanitarium, Incorporated (sued herein as Nance's Sanitorium, Inc.), owned and was in possession of a building in Calistoga, Napa County, California. The portion of the building which is concerned in this case was floored with cement and divided, by partitions, into separate rooms. One such room was called, and is referred to in the evidence and herein as, the "laundry room." It adjoined a hall space and was connected therewith by a doorway 2 feet, 8 inches in width.

Prior to May, 1949, a fire had destroyed the roof and most of the walls of the laundry room, and, in May, it was exposed to the sky and to view from outdoors. From the hall space to the floor of the laundry room proper, through the aforementioned doorway, the concrete floor was continuous and descended in a slight slope, also referred to as a "ramp." Originally the floor was of planks. Later concrete was poured over the planks. There had been a fire in the building. Then defendant contracted with plaintiff, a licensed cement contractor, to pour another layer over the first layer of cement. To do that, plaintiff said it was necessary to chip or scarify the first cement so that the next layer would stick. It was agreed that defendant would build the forms and do the chipping. It hired a man from the city of Calistoga and that city's jackhammer to do the chipping. This man took his orders from defendant. This man was Kenneth Grimsley, and on May 9, 1949, he was sent to do some work at the sanitarium. He took his compressor and jackhammer with him, and when he arrived at the job he met Mr. John-

son, admittedly a carpenter employed by defendant. Johnson instructed Grimsley where to work and the chipping he was to do. Then Mr. Hughes, president, and Nance, vice president, of defendant appeared and instructed him to "break up some more cement along in here for a vent of some kind or other, a trough that went along in through there and over around the area of the door here was to be scarified, and also to take out a piece of pipe that was all the way across here . . . and I was to break that out of there." The jackhammer went on through the floor and almost lost the hammer, and he asked what was under the floor and was told there was a reservoir there and he saw steam coming through where he bored through the floor.

Respondent testified that he and his two helpers went to the laundry room about 8:10 a. m. to pour the cement, and the accident happened at 8:15 a. m.; he looked through the hole made by the jackhammer and saw and knew there was a water reservoir or tank under the floor and saw steam coming up from the water; his foot did not go through any hole made by the jackhammer; his leg went through the floor up to 3 inches above his knee, and he felt the hot water burning his leg.

Other material facts will be hereinafter set forth.

Appellant's first two contentions that the evidence is insufficient to support a finding of negligence in defendant and that the trial court erred in applying the doctrine of "res ipsa loquitur" to the evidence in the case will be discussed together as they are to a certain extent interrelated.

The evidence shows without conflict that respondent was a business invitee upon the premises of appellant. ██ And as stated in the recent case of *Raber* v. *Tumin*, 36 Cal.2d 654, at page 658 [226 P.2d 574]:

"Plaintiff was a business visitor toward whom Tumin, together with the servant through whom he was acting in altering the premises, 'was obliged to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn . . . of danger. The duty was not limited to conditions actually known . . . to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care. [Citations.]' (*Blumberg* v. *M. & T. Incorporated* (1949), *supra*, 34 Cal.2d 226, 229 [209 P.2d 1].)"

██ Appellant contends that Grimsley, who did the actual work of chipping the floor with the jackhammer, was the

agent of respondent. However, the record shows that appellant arranged with the city of Calistoga to have the chipping done and that the city sent Grimsley to appellant's premises to do the work, and that Grimsley was told what to do by appellant's officers and employee. Even though we were able to agree with appellant's contention that Grimsley was an independent contractor, this would not relieve appellant from its obligation and duty toward an invitee as hereinbefore set forth. ■ The following language of our Supreme Court in *Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 260 [143 P.2d 929], is applicable:

"The general rule is set forth in the Restatement of the Law of Torts, Negligence, page 1138, section 422, as follows: 'The duty which a possessor of land owes to others to put and maintain it in reasonably safe condition is nondelegable. If an independent contractor, no matter how carefully selected, is employed to perform it, the possessor is answerable for harm caused by the negligent failure of his contractor to put or maintain the buildings and structures in reasonably safe condition, irrespective of whether the contractor's negligence lies in his incompetence, carelessness, inattention or delay.' "

■ The jury impliedly found that appellant realized or should have realized that the floor of its building on May 10th involved an unreasonable risk to business visitors and that respondent did not have the knowledge thereof. There is ample support in the record for this finding.

Nor can we agree with appellant's contention that upon the record here, if there was a risk, respondent as a matter of law assumed it. ■ At appellant's request the court correctly instructed the jury:

"One is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger or when he knows, or in the exercise of ordinary care would know, that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

"One who thus assumed a risk is not entitled to recover for damage which resulted from the dangerous condition or conduct to which he thus exposed himself."

■ The implied finding of the jury was that respondent did not assume the risk and that the chipped floor did not, of itself, demonstrate that the floor was a dangerous instrumentality, and also that appellant had no reason to believe that respondent would realize the risk involved.

The record shows that the condition of the floor made it dangerous, that appellant and its employees were aware of it, that they did not warn respondent of such dangerous condition and that respondent was not aware of it.

We believe that the record would support a finding that defendant was negligent and that such negligence was a proximate cause of the injuries to plaintiff, even without the application of the doctrine of res ipsa loquitur. ■ But we believe also the doctrine was clearly applicable to the instant case.

In *Raber* v. *Tumin, supra,* the court said at page 659:

"As declared in *Ybarra* v. *Spangard* (1944), *supra,* [25 Cal.2d 486 (154 P.2d 687, 162 A.L.R. 1258)] page 489, 'The doctrine of res ipsa loquitur has three conditions: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." (Prosser, Torts, p. 295.)' A more detailed explanation of the applications, limitations and effects of the doctrine may be found in *Dierman* v. *Providence Hospital* (1947), 31 Cal.2d 290, 295 [188 P.2d 12]. It has also been more specifically pointed out that 'the applicability of the doctrine of res ipsa loquitur depends on whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citations.] "Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply." (Prosser on Torts [1941], p. 297.)' (*La Porte* v. *Houston* (1948), 33 Cal.2d 167, 169 [199 P.2d 665].)

"We are satisfied that a permissible view of the evidence here meets the several elements of the doctrine of res ipsa loquitur as above depicted. Certainly the accident appears to satisfy the first requirement: an invitee in a showroom is not ordinarily, in the absence of someone's negligence, struck on the head by a falling ship's ladder; secondly, the evidence tends to show that the instrumentality—the ladder

on the slippery floor in the showroom—was within the exclusive control of defendants."

We think it is clear that when respondent was precipitated through the concrete floor and his foot immersed in scalding water, it was the kind of an accident which ordinarily does not occur unless someone is negligent. We think it is clear also that the floor of the room was exclusively in the control of the defendant. The jury was fully instructed on the subject of contributory negligence and was told specifically: "Whenever these instructions, ladies and gentlemen of the jury, say the facts may warrant recovery for plaintiff, that of course is subject to all the instructions of the court. That means and includes the absence of contributory negligence, which is a defense."

Thus the jury impliedly found that respondent was not guilty of any contributory negligence, or that "the accident was not due to any voluntary action or contribution on the part of plaintiff."

Appellant's next main contention is that the language of the res ipsa loquitur instructions given did not state the law, or was otherwise defective, to appellant's prejudice.

The court gave the following instructions relating to the doctrine of res ipsa loquitur, the first two being at the request of respondent, and the third at the request of appellant:

### Plaintiff's Instruction No. 8

"From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendants. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that they did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on their part."

### Plaintiff's Instruction No. 9

"The instruction just given may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence.

The instruction, however, is based on a special doctrine of the law which may be applied only under special circumstances, they being as follows:

"FIRST: The fact that some certain instrumentality, by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendants at the time the cause of injury was set in motion, it appearing on the face of the event that the injury was caused by some act or omission incident to defendants' management.

"SECOND: The fact that the accident was one of such nature as does not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care.

"THIRD: The fact that the circumstances surrounding the causing of the accident were such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the one in charge of the instrumentality may reasonably be expected to know, and be able to explain, the precise cause of the accident.

"When all these conditions are found to have existed, the inference of negligence to which they give birth will support a verdict for the plaintiff, in the absence of a showing by defendants that offsets the inference."

### Defendant's Instruction No. 54

"In making such a showing, it is not necessary for a defendant to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant.

"If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of defendant was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant."

Earlier in its instructions the court, at the request of appellant, instructed the jury that "The mere fact that an

accident happened to plaintiff does not entitle plaintiff to a verdict.''

■ Appellant argues: ''It is submitted that the trial Court committed prejudicial error in giving these two instructions in the same case, for the reason that they are inconsistent and necessarily confused the jury. Under the former, an inference of negligence from the mere occurrence of the accident is precluded. Under the latter, the jury was instructed that such inference 'arises.' The pronouncement of a fact followed its disclaimer.'' We see no necessary inconsistency in these instructions and do not believe that they necessarily confused the jury. One states that plaintiff is not entitled to a verdict merely because an accident happened, and the others state that from certain facts an inference arises that there was negligent conduct on the part of defendant. All instructions must be read and considered together, and in the instant case appellant was entitled to have the instruction offered by it given, and respondent was certainly entitled to an instruction on the doctrine of res ipsa loquitur.

The most serious contention urged by appellant is that ''the res ipsa loquitur instructions erroneously compelled the inference of negligence, which is properly permissive.''

■ Appellant objects particularly to the language : ''From the happening of the accident . . . there arises an inference that the proximate cause . . . was some negligent conduct on the part of the defendants,'' and argues that ''The jury, thus, is instructed, not that it is permitted to, or may, draw an inference, but that one 'arises,' or is 'given birth' by a finding of the existence of certain conditions. This entirely arrests the discretion of the jury to reject the existence of either the conditions or the inference.''

As hereinbefore stated, all instructions must be considered together as a whole. In the instant case the instructions were lengthy, covering 35 pages of the reporter's transcript, and, in addition to the general instructions usually given in negligence cases, were full and correct on negligence, contributory negligence, duty toward invitees, res ipsa loquitur, assumption of risk, and other subjects. The instructions on res ipsa loquitur were taken verbatim from California Civil Jury Instructions (B.A.J.I.) and while, as suggested by Dean Prosser in his very thorough and informative article on ''Res Ipsa Loquitur in California'' (37 Cal.L.Rev. 231), the instruction approved in *Juchert* v. *California Water Ser-*

*vice Co.*, 16 Cal.2d 500, 513 [106 P.2d 886], would as a general rule be a better and simpler instruction, we are convinced that, upon the record here, no prejudice resulted to appellant from the statement that under the facts of the instant case an inference of negligent conduct arises. The instruction approved in the Juchert case read:

"I instruct you that when a thing which causes injury is under control and management of a defendant and the accident is such as in the ordinary course of things does not happen if those who have the management use ordinary care, it affords reasonable evidence in the absence of explanation by the defendant, that the accident arose from want of ordinary care. Therefore if you find that the defendant water company had exclusive control and management of its water pipe, and that water was permitted to escape therefrom, then I instruct you that the escaping of said water from said pipe affords evidence in the absence of explanations, that it arose from a want of ordinary care on the part of said water company in the control and management of said pipe."

Certainly it is clear that the thing which caused the injury here was under the control and management of appellant and that the accident was one that in the ordinary course of things does not happen if those who have the management use ordinary care.

We have read and analyzed all the instructions. They are unusually complete and singularly free from error. It would be strange, indeed, if so many instructions on so many subjects would not tend to be confusing to at least some of the jurors. It is apparent that the trial judge endeavored to so instruct the jury that all issues would be fairly presented to them. It was made clear to the jury by a number of appropriate instructions, following those on res ipsa loquitur, that contributory negligence was a defense and that if respondent failed to use ordinary care to observe what was obvious, or if he was aware, or should have been aware of an existing danger, and that these things or any other negligence on his part contributed in the slightest degree to the accident, the verdict must be for the defendant.

Appellant's final contention is that the amount of damages, $15,000, awarded to respondent is excessive. This was one of the grounds of a motion for a new trial, and the ruling of the trial court denying the motion was a determination by it that the damages were not excessive.

As was stated in *Holmes* v. *Southern Calif. Edison Co.*, 78 Cal.App.2d 43, at page 51 [177 P.2d 32]:

"The powers and duties of a trial judge in ruling on a motion for new trial and of an appellate court on an appeal from a judgment are very different when the question of an excessive award of damages arises. The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge the credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. (*Fisher* v. *Zimmerman*, 23 Cal.App.2d 696 [73 P.2d 1243]; *Sassano* v. *Roullard*, 27 Cal.App.2d 372 [81 P.2d 213].) When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors. Generally speaking, in cases of this kind, when damages are recovered for the destruction of property, if there is substantial evidence in the record supporting the damages awarded by the jury and it is inferentially approved by the trial judge by his denial of a motion for new trial without reducing the damages, we are powerless to reduce them or to hold the award excessive."

The evidence as to the extent of respondent's injuries and the probable duration of their injurious effects was conflicting. However, the record shows that respondent suffered very severe burns to his right leg from a few inches above the knee down to his foot; that he incurred a medical and hospital bill of approximately $300; that he could not work at his trade for six weeks, and that he was earning $750 per month; that a doctor testified that there would be a 20 per cent limitation in the movement of his ankle joint, and a shrinkage of right leg 5/16 of an inch as compared to the left; that he had permanent scars covering the foot, ankle and lower portion of the right leg and that as he grew older he was reasonably certain to have ulcers of the leg over the area of burn; and that he had suffered great pain and would continue to suffer pain in the future. The following language in the recent case of *Squires* v. *City of Los Angeles*, 100 Cal.App.2d 708, 713 [224 P.2d 774], is quite applicable to the instant case:

"The amount of money that will be adequate compensa-

244

tion for injuries and for incident pain and suffering rests largely within the sound discretion of the jury. Such discretion will not be interfered with by a reviewing court unless it clearly appears that the award is so grossly excessive as to shock the conscience and to compel the conclusion that the verdict was the result of passion and prejudice. [Citing cases.]''

The court also said, at page 714:

''There is nothing in the record to indicate that the damages awarded are excessive or that the verdict was a result of passion or prejudice on the part of the jury. Moreover, since the value of the dollar is measured by its purchasing power, in view of the current economic conditions and of the depreciated value of money the verdict cannot be criticized as being excessive.''

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.