[Civ. No. 2548. Fourth Appellate District.—March 12, 1941.]

F. C. FERGUSON, Respondent, v. GEORGE NAKAHARA et al., Appellants.

[Civ. No. 2549. Fourth Appellate District.—March 12, 1941.]

LETTIE CUSACK, Respondent, v. GEORGE NAKAHARA et al., Appellants.

436

Borton, Petrini, Conron & Borton for Appellants.

Brittan & Mack for Respondents.

MORAN, J., *pro tem.*—Defendants have appealed from judgments rendered against them in these two actions, consolidated for trial and now considered together on appeal as they present identical issues.

Both actions arise out of a collision between a Ford sedan driven by William Cusack and owned by F. C. Ferguson who was riding therein at the time, and a GMC truck driven by George Nakahara and owned by Harry Nagai Produce Company. Ferguson was injured and his Ford damaged. William Cusack was killed.

Ferguson filed suit against the driver and the owner of the truck to recover damages for alleged personal injuries sustained and damage suffered to his automobile.

Lettie Cusack, the widow of William Cusack, instituted the second action to recover damages for the alleged wrongful death of her husband. The two cases were tried together before a jury and resulted in verdicts in favor of both plaintiffs.

The first of three grounds relied upon by appellants for a reversal of the judgments is that the verdicts are contrary to the evidence and that contributory negligence appears as a matter of law without substantial conflict in the evidence. In determining this contention of appellants it is necessary that we review the evidence under the rule that if there is any real and substantial conflict in the evidence or reasonable inferences that may be drawn therefrom, the appellate court will not set aside the findings of fact made by the jury in the lower court.

Viewing the evidence most favorable to the respondents the following facts appear: The collision of the Ford and the GMC truck occurred at about 9:30 P. M., June 26, 1938, in the center lane of U. S. Highway No. 99, about a mile north of Lebec, in the county of Kern. The paved portion of the highway at that point, and for some distance on either side thereof, was straight and extended in a northerly and southerly direction. The pavement was thirty feet in width and marked with white lines into three traffic lanes, each ten feet in width, with an asphalt shoulder eight feet in width on each side.

The deceased, William Cusack, was driving the Ford sedan in a northerly direction at a speed of from forty-five to fifty miles an hour. He passed a vehicle driven by Glenn Burd, proceeding in the same direction, and then returned to the

east traffic lane behind an unidentified vehicle which was also traveling north in the easterly lane. Cusack next drove the Ford to his left and partially within the center lane so that its left wheels were about two feet west of the white line dividing the east and center traffic lanes. The Ford continued in this position, following the unidentified vehicle, without any alteration of its course or change of speed until shortly before the collision of the Ford with the GMC truck, when it was turned back slightly to the east.

As the Ford was proceeding north, defendant Nakahara was driving the GMC truck in a southerly direction behind a one and one-half ton Reo Speedwagon which was being driven by August Gnese and was loaded with boxes of figs weighing between four and five tons and stacked to a height of eight feet from the ground. A semi truck and trailer was directly in front of the Reo and was proceeding in the same direction. Gnese blinked the lights of the Reo and the driver of the semi truck and trailer then blinked its lights as a signal that the Reo might pass. Gnese then drove into the center lane of traffic to pass the semi truck and trailer and seeing the Ford sedan approaching from the south at a distance of two hundred fifty feet, ''or probably farther'', applied his brakes and immediately turned to his right; the driver of the semi truck and trailer pulled his truck slightly to his right and Gnese drove back into the west lane behind the semi truck and trailer. Nakahara, traveling about fifty feet behind the Reo and at a speed of about twenty-five miles an hour, and gaining on the Reo, when about one hundred feet north of the point of collision, pulled the GMC truck into the middle lane behind the Reo, which obstructed his view of north-bound traffic, and, as the Reo slowed down and turned into the west traffic lane, Nakahara, then about twenty-five feet back of it and without applying his brakes, attempted to go around the Reo to its left. The collision of the Ford and the GMC truck immediately followed, the left front fender and wheel of the Ford coming into contact with the left front corner of the bed of the GMC truck, at a point about fourteen inches west of the white line dividing the east and center traffic lanes. The Ford was badly damaged and William Cusack and Carl Cross, who was also riding in the Ford, were killed, and the plaintiff Ferguson, who was asleep at the time, was seriously injured.

The eye-witnesses to the collision were Burd, Gnese and Nakahara. Burd and Gnese testified at the trial, but as

Nakahara was not present, his deposition, previously taken, was read into the evidence. The testimony of these witnesses was conflicting in many respects with the testimony of the others and the testimony of each of them contains conflicting and contradictory statements within itself. As it would serve no useful purpose and would unduly extend the length of this decision, we will not discuss these conflicts.

It is admitted by the parties that any negligence or contributory negligence on the part of Cusack would be imputed to Ferguson and to Mrs. Cusack.

Appellants contend that Cusack violated the provisions of subdivision *a* of section 526 of the Vehicle Code by driving the Ford partially within both the east and center lanes of travel when it was not safe for him to do so and at a time when there were no other vehicles to his right in the easterly lane; that he also violated the provisions of subdivision *b* of this section by driving the Ford into the center lane in overtaking and passing another vehicle where the roadway ahead was clearly visible but the center lane was not clear of traffic within a safe distance, and that these acts on his part constituted negligence as a matter of law, citing the cases of *Reeves* v. *Lapinta*, 25 Cal. App. (2d) 680 [78 Pac. (2d) 465], and *Mazgedian* v. *Swift & Co.*, 22 Cal. App. (2d) 570 [71 Pac. (2d) 833].

Section 526 of the Vehicle Code, in effect at the time of the accident, governing the driving of vehicles upon a three lane highway, provided:

"Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

"(a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

"(b) Upon a roadway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway ahead is clearly visible and such center lane is clear of traffic within a safe distance, . . . "

The members of the jury may have believed from the evidence that Cusack drove the Ford into the center lane at a distance of more than 250 feet south of the Reo, with the intention of passing the unidentified vehicle proceeding north

in the east lane ahead of him, at about the same time the Reo entered it, or that Gnese started to drive the Reo back into the west lane at the same time, or at approximately the same time that Cusack entered the center lane, thereby conceding the right-of-way to him, and that Nakahara turned the GMC truck sharply to his left into the center lane directly in front of the Ford, to avoid a collision with the rear end of the Reo which had slowed down and turned to its right, and that Cusack could not have seen and had no way of knowing that the GMC truck was following the Reo so closely, until almost the moment the collision occurred.

The questions as to whether it was practical and safe for Cusack to drive the Ford into the center lane and then pursue the line of travel that he followed; whether the center lane was clearly visible ahead of him and clear of traffic for a safe distance, and whether Nakahara pulled his truck sharply to his left into the center lane back of the Reo and directly in front of the Ford, or whether he should have returned to the west lane of travel behind the Reo and thereby have avoided the collision, were all of fact for the jury, and, we believe, were issues of facts on which reasonable men might differ.

Furthermore, if the members of the jury believed that Cusack was negligent in the operation of the Ford, such negligence was only one element of contributory negligence and was of no significance in these cases unless the members of the jury also believed, from a preponderance of the evidence, that such negligence proximately caused or proximately contributed to the injuries of Ferguson and the death of Cusack. When the evidence is conflicting and reasonable men might differ as to the inferences or conclusions which ought to be drawn from it, the issue of proximate cause is also one for the jury to determine. (*Ketchum* v. *Pattee,* 37 Cal. App. (2d) 122 [98 Pac. (2d) 1051]; *Rivera* v. *Hasenjaeger,* 29 Cal. App. (2d) 431, 432 [85 Pac. (2d) 167].)

As we have heretofore indicated, the question of negligence on the part of the defendant Nakahara, and the question of contributory negligence on the part of Cusack, were matters for the determination of the jury and were properly submitted to it.

The second contention of appellants is that the court erred in giving an instruction offered by plaintiffs, purporting to deal with the burden of proof upon the issues of negligence and contributory negligence. The instruction complained of

appears in the last sentence of the following instruction given by the court: "In determining the issue of negligence and of contributory negligence the court instructs you that the burden of proving negligence is upon the party asserting such negligence; but in determining whether there has been such negligence you will consider all of the evidence bearing upon that subject regardless of which party introduced the same. That is to say, if you find the greater weight of all the evidence is in favor of the negligence of the defendants, you should accept that as a proved fact in the case; while if the evidence on that issue is, in your judgment, evenly balanced or preponderates against such negligence, it is not proved, and you should find that the defendants were not negligent. *If you find that the greater weight of all the evidence is in favor of the contributory negligence as a proved fact, or if the evidence on the issues, is, in your judgment, evenly balanced, or preponderates against such contributory negligence it is not proved, and you should find that the plaintiff was not guilty of contributory negligence."* (Emphasis ours.)

The last sentence of this instruction, specifically referring to contributory negligence, most obviously, was bungled, in that it instructed the jurors that if they should find that the greater weight of all the evidence was in favor of the contributory negligence as a proved fact, then, notwithstanding that weight of the evidence, they must find that the plaintiff was not guilty of contributory negligence.

Standing alone, this erroneous instruction imposed upon the appellants the impossibility of ever proving contributory negligence, except possibly by the criminal rule of beyond reasonable doubt and to a moral certainty, which would place upon them an undue burden that is not required of a party having the affirmative of such issue in a civil action. (Code Civ. Proc., sec. 2061; *Cooper* v. *Spring Valley Water Co.,* 16 Cal. App. 17 [116 Pac. 298]; *Berry* v. *Maywood Mutual Water Co.,* 11 Cal. App. (2d) 479 [53 Pac. (2d) 1032].) In determining whether the jury may have been misled by this erroneous instruction, it must be construed in connection with the other instructions given by the court, touching upon the subjects of burden of proof and weight of the evidence. In the first instruction given in regard thereto, the court defined burden of proof in general terms correctly, but did not direct the jury's attention to the subjects of negligence and contributory negligence. Then, after

giving the instruction above quoted, the court defined proximate cause and next advised the jury as follows: "In order, therefore, to find a verdict for the plaintiff, you must not only find from a preponderance of all the evidence that the defendants were negligent, but also that such negligence was the proximate cause of the injury to the plaintiff, and you must further find that the evidence fails to show by a preponderance thereof that the plaintiff was guilty of negligence contributing proximately thereto." In another instruction the court stated: "You are instructed that contributory negligence as used in these instructions is such negligence on the part of the plaintiffs as contributed to the accident complained of. If the deceased William Cusack failed to use the care of a reasonably prudent person under the same or similar circumstances, either in driving too fast or in not seeing the things of the traffic that he should have seen, or failed to operate and control his automobile with ordinary care, then the plaintiffs Lettie Cusack and F. C. Ferguson are guilty of contributory negligence, and if such negligence contributed even in the slightest degree to the injuries complained of plaintiffs cannot recover in this action."

All instructions of the court are to be considered and construed as a whole to determine whether they contain reversible error. "If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant a reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury." (*Soda* v. *Marriott*, 118 Cal. App. 635 [5 Pac. (2d) 675]. See, also, *Akers* v. *Cowan*, 26 Cal. App. (2d) 694 [80 Pac. (2d) 143].)

It is evident from a reading and consideration of all the instructions given by the court in these cases that the erroneous instruction is in direct conflict with the other more general and correct instructions upon the subjects of burden of proof and weight of the evidence, especially those referring

to contributory negligence, and we are convinced that this conflict cannot be disregarded as it may have had a controlling influence upon the minds of the jurors.

█ Appellants also contend that the court committed prejudicial error in instructing the jury, at the request of respondents, that: ''The violation of any provision of the Motor Vehicle Code, except as you are otherwise instructed in these instructions, also constitutes some evidence of negligence.''

Respondents offered an instruction quoting the provisions of section 526 of the Vehicle Code, and another quoting section 531 of the same code. Both of these instructions were given by the court, but neither of them nor any other instruction given, contained a statement that a violation of these sections, or either of them, constituted negligence as a matter of law.

Appellants relied upon the provisions of section 526 of the Vehicle Code to establish their defense of contributory negligence, and even though the provisions of that section applied alike to them and to respondents, they were entitled to an instruction that a violation thereof constituted negligence as a matter of law, rather than that such a violation was merely some evidence of negligence. █ It has long been established that the violation of a section of the Vehicle Code (with a few express exceptions not applicable here) constitutes negligence as a matter of law and not merely some evidence of negligence. (*Reeves* v. *Lapinta, supra; Mazgedian* v. *Swift & Co., supra.*)

█ Although the court further instructed the jury that if William Cusack failed to use the care of a reasonably prudent person in not keeping an appropriate lookout or in not operating and controlling his car with ordinary care, then the plaintiffs were guilty of contributory negligence and if such negligence contributed to their injuries they could not recover, did not correct the error created by the giving of the faulty instruction. The effect of the giving of this erroneous instruction in connection with the instruction quoting the provisions of section 526 of the Vehicle Code, was to permit the jurors to exercise their independent judgments as to whether or not a violation of this section, if they found that Cusack violated any of the provisions thereof, constituted negligence on his part, imputable to respondents, when appellants were entitled to a specific and definite instruction that a violation

of the section constituted negligence as a matter of law, without any further proof.

The evidence in these cases was not only conflicting but was quite evenly balanced upon the issues of negligence and contributory negligence. Appellants were entitled to have had the cases presented on correct and proper instructions. The giving of the two erroneous instructions must be held to have been prejudicial.

The judgments are reversed and both causes are remanded for new trial.

Barnard, P. J., and Marks, J., concurred.