[Civ. No. 6507.   Third Dist.—April 17, 1941.]

LOUISE DAVIS, Respondent, v. HUGH DUNCAN et al., Defendants; ROBERT DUNCAN et al., Appellants.

Victor Hyatt and John H. Fleming for Appellants.

Downey, Brand & Seymour and Frederick R. Pierce for Respondent.

HELD, J., *pro tem.*—In this action to recover damages for personal injuries, the jury returned its verdict in favor of plaintiff for the sum of $10,000. From the judgment entered on that verdict, defendants appeal, and contend that the evidence establishes as a matter of law that the injuries suffered by plaintiff were caused by her own negligence, and not by the negligence of defendants.

Respondent was employed as a saleswoman in the drapery department in the store of John Breuner Company, in Sacramento. Appellant Robert Duncan, doing business as Floor

Service Company, entered into a contract with plaintiff's employer to sand, seal and wax certain floors in the rug department of the Breuner store. Appellant Roberts was an employee of appellant Duncan in performing the work called for by the contract. This work was done in three sections, that is, one portion of the floor was completed before another was entered upon, and the process involved the sanding and smoothing of the floor with a sanding machine, and the application of a composition known as Duro-Seal, to seal the wood against dirt. This composition was allowed to dry on the floor overnight, and the following morning the floor was rubbed down with a machine equipped with a steel-wool pad to remove the excess Duro-Seal from the floor. Thereupon a liquid wax finish known as I–C–E finish was poured upon the floor in streaks and spread with an applicator, a wooden block about sixteen inches long wrapped with a sheepskin cover, and having a handle about five feet long. After the wax finish had been spread, the floor was allowed to dry, and after the lapse of approximately thirty to forty-five minutes the floor was polished by the use of a machine.

The drapery department in which plaintiff was employed was to the west of, and separated from, the rug department by a partition, at the north and south ends of which were doors opening from one department to the other. Near the northeast corner of the rug department was a service desk, near which appellant Roberts, on the morning of April 7, 1939, was engaged in pouring and spreading I–C–E wax finish on the adjacent floor. Plaintiff had occasion to approach the service desk on an errand. Her course lay through the door at the south end of the partition, thence northerly along the partition and thence easterly in the direction of the service desk. As she neared the service desk she slipped and fell, and sustained the injuries complained of. Shortly prior to the accident, appellant Roberts had poured a quantity of the wax finish in the vicinity of the place where plaintiff fell, and, a few minutes before the accident, had completed the spreading of the finish over that area, and at the time was spreading the finish to the south.

That after the application of the wax finish and prior to the use of the polishing machine, the floor was in a dangerous condition was testified to by several witnesses. One said it

was "very slick", another said that it was "quite slippery", and still another that it was "very slippery".

Defendants concede that they owed to plaintiff the duty of ordinary care, and that if there existed latent or hidden perils it was incumbent upon them to give plaintiff warning thereof, unless plaintiff was aware of the danger. The question then arises whether there was substantial evidence to sustain the implied finding of the jury that a latent or concealed peril existed, and that plaintiff had no knowledge thereof.

That appellants recognized the dangerous condition of the floor and their duty to give warning to those using it is clear from the testimony of the appellant Roberts and the witness John Duncan, a fellow-worker of appellant Roberts. Roberts testified that he had warned persons crossing the floor that "it was slippery and dangerous"; and the witness John Duncan warned some of the employees who walked across the floor that "they shouldn't be walking on there because that interfered with our work and it was very slick". Appellant Roberts, in explaining the circumstances of the accident shortly after it occurred, stated to Mr. Irwin Sibole, the assistant manager of the Breuner Company, that he had been trying to watch for people coming down the aisle toward the service desk, and to warn them that it was slippery, and that he had not seen plaintiff in time to give her warning.

That warning was required is evident from the fact that although the floor was in fact slippery and dangerous, it did not so appear. The witness Beringer testified that the floor "looked a little deceiving because it had a dull effect. It didn't look slippery." To the plaintiff, the floor looked like an ordinary hardwood floor, and she noticed nothing unusual about the floor over which she was walking. Nor did the witness Mrs. Verne Pillsbury, another employee of the John Breuner Company, notice anything unusual about the floor in the area wherein plaintiff fell. She had passed over it shortly prior to the accident. The witnesses Beringer and Sibole, who came upon the scene immediately after the accident, likewise saw nothing unusual about the appearance of the floor. It is uncontradicted that plaintiff was not even aware that the work was in progress, nor was she warned in any manner of the dangerous condition. The case of *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 Pac. 76], is therefore not applicable. There was substantial evi-

dence that the peril was hidden and latent, not obvious, and that plaintiff had no knowledge of its existence. The jury was justified in concluding that the peril was not such as she could have observed in the exercise of reasonable care.

The general and elementary rule is that negligence is a question for the jury, and unless the court can say as a matter of law that negligence has or has not been shown, it may not interfere with the conclusion arrived at by the jury. (19 Cal. Jur., p. 719.) This rule applies equally to contributory negligence. (19 Cal. Jur., p. 735.) And on appeal, the duty of the appellate tribunal stops when it has determined that there is some substantial evidence to support the finding of the jury. (*Anderson* v. *Hagen,* 19 Cal. App. (2d) 714 [66 Pac. (2d) 168]; *Raggio* v. *Mallory,* 10 Cal. (2d) 723 [76 Pac. (2d) 660].) And if there is any real and substantial conflict in the evidence, or reasonable inferences that may be drawn therefrom, this court may not set aside the findings of fact made by the jury in the lower court. (*Ferguson* v. *Nakahara,* 43 Cal. App. (2d) 435 [110 Pac. (2d) 1091].)

In view of the evidence in this case, this court may not hold that the implied finding of the jury, that defendants did not exercise ordinary care, and that plaintiff was not guilty of contributory negligence, does not find support in the evidence. (*Hodge* v. *Weinstock, Lubin & Co.,* 109 Cal. App. 393 [293 Pac. 80].)

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.