[Civ. No. 15528.   Second Dist., Div. Three.   Aug. 6, 1947.]

FLORENCE R. VINCENT et al., Appellants, v. LOS ANGELES TRANSIT LINES (a Corporation) et al., Respondents.

Eugene E. Sax for Appellants.

Gibson, Dunn & Crutcher and Carroll W. Harlan for Respondents.

WOOD, J.—Plaintiffs, husband and wife, commenced this action to recover damages allegedly sustained as the result of a collision between an automobile, which the wife was driving, and a streetcar owned by the defendant Los Angeles Transit Lines. Trial was without a jury. After the wife had testified on direct examination, and before the plaintiffs had rested their case, defendants made a motion for a nonsuit on the ground that plaintiff was guilty of contributory negligence as a matter of law, and the court granted the motion. Plaintiffs appeal from the "judgment," which in this case is the order granting the motion for nonsuit.

The accident occurred about 6:30 a. m., before daylight, on November 19, 1944, at a street intersection on Figueroa Street, when plaintiffs' automobile collided with defendant's streetcar as the streetcar was making a left turn. Figueroa Street extends in a general northerly and southerly direction, and at the place where the accident occurred it is intersected by a highway which extends in a general easterly and westerly direction. The part of that highway which extends east of Figueroa Street is known as Pasadena Avenue, and the part of the highway which extends west of Figueroa Street is known as York Boulevard. Figueroa Street is paved, is about 72 feet wide at the southern entrance to the intersection, and is about 62 feet wide at the northern entrance thereof. The west curbs of that street on both sides of the intersection are in line with each other, but the east curb on the north side of the intersection is about 10 feet farther to the west than the east curb on the south side. The York Boulevard entrance to the intersection is about 81 feet wide and the Pasadena Avenue entrance is about 80 feet wide. There is a marked pedestrian crosswalk at each entrance to the intersection, and a boulevard stop sign on each corner. Mechanical traffic signals at the intersection were not in operation at the time of the collision. There are two streetcar tracks on Figueroa Street which, on both sides of the intersection, are approximately in the middle of the street, and those tracks as they extend across the intersection, from the wider south entrance to the narrower north entrance of the intersection, swerve about 10 feet to the west. At a point on those tracks on Figueroa Street about 52 feet south of the intersection two streetcar tracks branch off from the Figueroa streetcar tracks and curve to the west around the southwest corner of the intersection onto York Boulevard. The distance from

the center of the intersection to its southwest corner is about 60 feet. The innermost rail of the curved tracks is about 13 feet from the southwest corner of the intersection, and the outermost rail is about 30 feet from that corner and about 30 feet from the center of the intersection. In other words, the curved tracks branch from the Figueroa tracks about 100 feet south of the center of the intersection, and do not go near the center of the intersection, but miss it about 30 feet as they cut across the middle of the southwest quarter of the intersection. There are no eastbound or westbound tracks in the middle of the intersection, and there are no tracks on Pasadena Avenue.

The evidence shows that Florence Vincent, hereinafter referred to as plaintiff, accompanied by her mother, was driving from her home to a hospital where she was employed as a nurse. The headlights of her automobile were lighted, and she was proceeding in a southerly direction on Figueroa Street, about 5 feet from the western curb line. The pavement was dry, the weather was clear, and it was "practically dark." She came to a stop at the northwest corner of the intersection, then looked to her right and to her left, and observed there was no traffic nearby on York Boulevard or Pasadena Avenue. She then looked ahead and observed a northbound streetcar standing by the passenger safety zone south of the intersection. The place where the streetcar was stopped was about 57 feet south of the southern entrance to the intersection. She then proceeded in a straight course to go across the intersection. She did not look again at the streetcar until its headlight "flashed" in her eyes, at which time the front of her automobile was about 4 feet from the front of the streetcar. The streetcar had turned from the northbound track on Figueroa Street and was then proceeding on the curved track toward York Boulevard, going about 18 miles an hour. Plaintiff, who was traveling about 10 miles an hour when the headlight flashed in her eyes, started to put her foot on the brake but the left front of her automobile and the right front of the streetcar collided. Both came to a standstill at the point of impact, and the rear end of the streetcar was in the pedestrian crosswalk at the southern entrance to the intersection, and the front of it was about 30 feet southwest of the center of the intersection. Plaintiff had been in Los Angeles about three months, and it was the first time she had driven through that intersection. She did not know that streetcar tracks extended from Figueroa Street

to York Boulevard, and testified that due to the darkness and the contour of the street the curved tracks were not visible to her. The streetcar motorman did not ring a bell, or give any signal to warn plaintiff that he was going to make a turn to the left.

The evidence was sufficient to support a finding that defendant was negligent, and that such negligence was a proximate cause of the accident. Viewing the evidence in the light most favorable to plaintiffs, as this court is required to do on appeal from an order granting a nonsuit, it appears that the motorman gave no warning, by the ringing of a bell or otherwise, of his intention to turn left across the path of plaintiff; that before the collision plaintiff had traveled 55 feet into the intersection and had gone beyond the center thereof; that before the collision the streetcar had gone about 30 feet into the intersection, headed diagonally across the middle of the southwest quarter of the intersection about 30 feet from the center of the intersection; that the streetcar was stopped at the time plaintiff started across the intersection; and that plaintiff had no knowledge that streetcar tracks extended from the Figueroa Street tracks to York Boulevard.

Also viewing the evidence in the light most favorable to plaintiff, the trier of facts could reasonably infer: that plaintiff assumed, under the circumstances as she then knew them, that the streetcar, which was stopped many feet south of the intersection when plaintiff proceeded forward, would proceed across the intersection on the Figueroa Street tracks; that, owing to the condition of darkness and the contour of the street, she did not see the streetcar tracks which branched from the Figueroa tracks to York Boulevard; that plaintiff, after having crossed the first half of the intersection where she should anticipate the approach of traffic from her left, then looked to her right, while proceeding to cross the last half of the intersection, for traffic approaching from the south side of York Boulevard, since it was her duty to look in the direction from which danger might be anticipated; that while she was crossing the last half of the intersection the circumstances were not such that she should have anticipated danger from vehicles approaching from her left, especially that the circumstances were not such that she should have anticipated that a streetcar would approach from her left cutting diagonally across the middle of the southwest quadrant of the intersection about 30 feet from the center of the intersection.

■ The duties of a streetcar motorman and a driver of an automobile, while approaching and traversing an intersection, are reciprocal and each is required to proceed with due regard for the rights of the other. (See *Wright* v. *Los Angeles Ry. Corp.*, 14 Cal.2d 168, 173 [93 P.2d 135].) "While street cars must run upon the tracks provided for them, they have no absolute or pre-eminent *right of way over intersections*, but must use the same with due regard to the safety and rights of the general public." (Ibid.)

The question of contributory negligence must be determined upon the circumstances of each particular case, and is ordinarily one for the trier of fact. "[C]ontributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826]; *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1]; *Pewitt* v. *Riley*, 27 Cal.2d 310, 316 [163 P.2d 873].) "'Contributory negligence is not imputable to a plaintiff for failing to look out for a danger which he had no reasonable cause to apprehend, or to a plaintiff who was deceived by appearances calculated to deceive an ordinarily prudent person.'" (*Brandenburg* v. *Pac. Gas & Elec. Co.*, 28 Cal.2d 282, 287 [169 P.2d 909].) "A decisive consideration in determining whether an act was negligent is whether the surrounding circumstances made it reasonably foreseeable that there was a risk of injury. When this question depends on the foresight of another it becomes pertinent whether the other had reason to perceive danger, and whether alertness to the requirements of the situation could be expected of him." (Id. p. 285.)

■ Plaintiff did not know that curved tracks branched from the Figueroa tracks to York Boulevard, and could not see those branched tracks as she was crossing the intersection. She was chargeable only with the duty of ordinary care in anticipating the presence of streetcar tracks at such a location in the intersection, and it was a circumstance to be considered that insofar as automobile traffic regulation is concerned, those curved tracks were on the wrong side of the street and were

"cutting" the center of the intersection by approximately 30 feet. It might be argued that even if plaintiff did not know that the curved tracks were there, and even if she was not required to anticipate their presence, she should have seen the streetcar while it was turning. The question here, however, is whether as a matter of law she should have seen it. In determining that question her lack of knowledge of the presence of the tracks and her inability to see them were important factors in considering whether she fulfilled her legal duty to be reasonably alert in looking in the directions from which danger might be anticipated. If she did not know the curved tracks were there and was not required to anticipate their presence in such a location, it is reasonable to assume that in the exercise of reasonable care she would devote her principal attention in the direction from which danger might be anticipated, which direction in crossing the last half of the intersection would be to her right, rather than her left, since danger might be expected from the approach of traffic on York Boulevard. The condition of the street on the last half of the intersection, as plaintiff knew it or should have known from appearances at the time, was not such that she necessarily had reasonable cause to apprehend danger from the approach of a streetcar or any traffic from her left, and it is not unreasonable to believe that the location of the curved track so far from the center of the intersection might easily deceive an ordinarily prudent person.

In the case of *Costerisan* v. *L. A. Railway Corp.*, 50 Cal. App.2d 143 [122 P.2d 598], the facts were similar to the facts in the present case, except that the approaching streetcar therein had not stopped, but was moving slowly, when plaintiff started across the intersection, and there was a question as to whether the motorman made the boulevard stop, and apparently the curved tracks therein were not in an unusual place in the intersection. It was held therein that plaintiff was not guilty of contributory negligence as a matter of law. The court therein, in affirming a judgment for plaintiff, said at page 145: "Contributory negligence is a matter of law only when from the facts reasonable men can draw but one inference. . . . That there was a question for the jury as to whether plaintiff was negligent is clear to any one not a partisan."

In *King* v. *Unger*, 25 Cal.App.2d 632 [78 P.2d 255], the court said, at page 634: "The plaintiff looked to the left

once. It is not the law that he owed a continuing duty to *look to the left*. The law is that he was under a continuing duty to exercise ordinary care. . . . It cannot be said that he was guilty of contributory negligence as a matter of law in not looking again to the left after starting across the street. Whether he acted as a reasonably prudent person was a question of fact for the jury."

In the present case, whether plaintiff under the circumstances here should have looked again toward the streetcar after proceeding into the intersection was a question upon which reasonable persons might draw different conclusions. Plaintiff was not guilty of contributory negligence as a matter of law.

The order granting the motion for a nonsuit is reversed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.