[Civ. No. 3806. Fourth Dist. Dec. 10, 1947.]

ERNEST BENTON, Appellant, v. ANDREW MacLEAN DOUGLAS, Respondent.

[redacted]

Fred A. Wilson and Wilson & Wilson for Appellant.

Parker, Stanbury & Reese for Respondent.

MARKS, J.—This is an appeal from a judgment based on a verdict for defendant in a case in which plaintiff, a pedestrian, was injured when he and an automobile driven by defendant collided on Highway 99, near Bloomington, in San Bernardino County.

The accident happened about 7:30 p. m. on April 26, 1945. There was sufficient daylight so that the lights on automobiles were not illuminated. The roadway was dry and visibility was good. Defendant is not accused of traveling at any excessive speed.

Highway 99 runs east and west, is straight, and has three lanes of concrete with wide, hard-surfaced shoulders on each side of the pavement. The accident happened where Church Street dead-ends at right angles in Highway 99. There is a marked pedestrian crosswalk crossing Highway 99 about 200 feet west of Church Street. Several hundred feet east of Church Street there is a rise in the grade of Highway 99, which plaintiff maintains was sufficient to obscure vehicles approaching from the east. It is not made clear just how far east of Church Street an automobile traveling west on High-

[redacted]

way 99 would come into the view of a pedestrian on the highway at Church Street, though the evidence indicates that it would be a number of hundred feet.

Church Street is improved with an oil strip 20 feet wide in its center. It has no sidewalks or curbs and no pedestrian paths on either side. The spaces usually reserved on streets for sidewalks is grown over with grass, brush and trees so that pedestrians use the roadway to walk on. There are no sidewalks or curbs on the south side of Highway 99 near the point of collision. Church Street south of the highway presents the appearance of an ordinary country road and there is no marked crosswalk across Highway 99 at that intersection. The intersection is in unincorporated territory.

The evidence is sharply conflicting on practically every phase of the case important here.

Plaintiff testified that he had been in the vicinity for several hours and had consumed about three beers; that he came·out of Spud's Cafe which is situated on the north side of the highway several hundred feet east of the intersection; that he walked west along the north side of the highway until he was opposite Church Street, where he turned south; that he looked to the east and saw no vehicle approaching; that he proceeded south into the center lane where he paused to let a truck pass which was traveling east in the south lane; that he then saw defendant's car for the first time; that it was a few feet from him traveling west in the center lane; that he attempted to throw himself onto the pavement so that he would be run over instead of being struck by the automobile.

It is not questioned that plaintiff was seriously injured. He denied being intoxicated.

Defendant testified that he was driving his car west in the north traffic lane when he saw plaintiff on the north edge of the highway; that plaintiff was weaving and swinging his arms and seemed to be intoxicated; that plaintiff started south across the highway, still weaving and swinging his arms; that he turned and proceeded north on the shoulder; that he turned and proceeded to walk south, still weaving and swinging his arms; that defendant, believing plaintiff intoxicated, edged his car to the south and into the center traffic lane to avoid plaintiff; that when the car was nearly opposite plaintiff, who was in the next lane, plaintiff either jumped or threw himself into the front of defendant's car. Defendant was

positive in his testimony that his was the only vehicle traveling on the highway near the place of the accident.

Under the facts before us the questions of the contributory negligence of plaintiff and that of the negligence of defendant and whether either proximately contributed to or proximately caused the accident were of fact to be determined by the triers of fact. (*Salomon* v. *Meyer,* 1 Cal.2d 11 [32 P.2d 631] ; *White* v. *Davis,* 103 Cal.App. 531 [284 P. 1086] ; *Shaw* v. *Robertson,* 8 Cal.App.2d 520 [48 P.2d 128] ; *Sanker* v. *Humberg,* 48 Cal. App.2d 203 [119 P.2d 431] ; *Ferguson* v. *Nakahara,* 43 Cal. App.2d 435 [110 P.2d 1091].) This seems to be conceded by plaintiff who does not argue the insufficiency of the evidence to support the verdict and judgment.

Plaintiff complains of defendant's instructions number 11 and number 5, of which he says: ''By Instruction No. 11 the jury was told that 'any failure' of plaintiff to yield the right of way to the motorist constituted negligence, and by Instruction No. 5 that if the plaintiff was guilty 'of any negligence' which 'contributed to the accident in any degree, no matter how slight' he could not recover.''

 In this connection it should be observed that plaintiff's instructions numbered 6, 12 and 13 were given to the jury. Those instructions were to the same general effect as the defendant's instructions numbered 11 and 5. If we assume error in those two instructions, we would be unable to reverse the judgment because of them under the invited error rule. (*Ray* v. *Kennedy,* 24 Cal.App.2d 583 [76 P.2d 147] ; *Jesse* v. *Giguiere,* 24 Cal.App.2d 160 [74 P.2d 310] ; *Smith* v. *Aggola,* 27 Cal.App.2d 750 [81 P.2d 997].)

The next question argued is whether or not there were unmarked crosswalks across the highway at the intersection, it being clear that there was no marked crosswalk there.

An unmarked crosswalk is defined by subdivision ''a'' of section 85 of the Vehicle Code as follows:

''That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street.''

Section 84 of the same code provides:

'' 'Sidewalk' is that portion of a highway, other than the roadway, set apart for pedestrian travel.''

Both of the foregoing code sections were read to the jury at the request of plaintiff.

■ There is nothing in the record indicating that any portion of Church Street had been set apart for pedestrian travel. Photographs indicate that the only portion of that street on which pedestrians could travel was the roadway.

The only case we have found bearing on the question of an unmarked crosswalk under similar circumstances to those of the instant case is *LaBranch* v. *Scott, ante,* p. 1 [185 P.2d 823], where it was held that there was no unmarked crosswalk at a similar intersection. This holding agrees with the rulings of the trial judge, as evidenced by his instructions in the instant case, and we find no error in those instructions.

■ Plaintiff complains of defendant's instructions 10 and 15. While he seems to admit that the instructions were correct statements of the law in the abstract, he argues that they were liable to mislead the jury under the facts of this case and that: "These instructions should have permitted the jury to determine whether the defendant was rightfully in the middle lane. If not, the defendant's duty, by reason of the violation, was greater than that of the plaintiff."

At plaintiff's request, sections 525 and 526 of the Vehicle Code were read to the jury so it was informed that the law provided that an automobile should not be driven into the center lane of a three-lane highway except when overtaking or passing another vehicle or in preparation for a left turn. The jury was also informed that violation of law might be negligence.

In addition to the rules of the code, there are other well-established rules permitting a driver to turn his vehicle into a center lane or onto his left side of a highway under some circumstances when endeavoring to avoid injury to another. While the instructions might have been more happily worded, we do not believe the jury could have been misled by them.

■ Plaintiff also complains of defendant's instruction number 9 in which the jury was told that it was plaintiff's duty ". . . at all times to exercise ordinary care to observe the approach of motor vehicles, which might constitute a hazard to him . . . ," and that if he "either failed to look at all, or that he looked and failed to see a danger that was in plain sight to be seen by one exercising ordinary care . . ." he was negligent. This instruction only placed on plaintiff the duty to use ordinary care for his own safety in observing the

approach of vehicles, and placed no undue burden upon him. (*Chase* v. *Thomas,* 7 Cal.App.2d 440 [46 P.2d 200].)

While the phraseology of some of the instructions given, as proposed by both parties, could have been improved, we find no serious error in them when all are taken as a whole and construed together.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 6, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1948. Shenk, J., and Carter, J., voted for a hearing.