[Civ. No. 13316. First Dist., Div. One. Dec. 26, 1947.]

JAMES A. BLYTHE, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Charles Reagh for Appellant.

John J. O'Toole, City Attorney, Sylvain D. Leipsic and A. Dal Thomson, Deputy City Attorneys, for Respondent.

PETERS, P. J.—On the night of December 24, 1944, plaintiff was injured when the automobile then being driven by him stalled at the intersection of Coleridge Street and Cortland Avenue in San Francisco on the streetcar tracks of defendant city and was hit by a municipal streetcar. Plaintiff brought this action for his injuries and damage to his automobile, alleging that the accident occurred as the result of the negligence of the city. The defendant denied the material allegations of the complaint and affirmatively pleaded contributory negligence on the part of plaintiff. On these issues the cause proceeded to trial in April, 1946. The jury returned a verdict for defendant, and from the judgment entered on the verdict plaintiff prosecutes this appeal.

The major contention of plaintiff is that the evidence demonstrates, as a matter of law, that the sole proximate cause of the accident was the negligence of defendant, and that the implied findings of the jury that defendant was not negligent, or that plaintiff was guilty of contributory negligence, are totally unsupported. In considering this contention as applied to the evidence in this case it seems necessary to once again remind counsel of the rule stated in the frequently cited case of *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] : "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (See, also, *Davidson Steamship Co.* v. *United States*, 205 U.S. 187, 192 [27 S.Ct. 480, 51 L.Ed. 764].) ■ This rule applies with equal vigor, of course, whether the appeal is by the plaintiff or the defendant. Under it the questions of negligence, contributory negligence and proximate causation, except in most unusual cases, are questions for the trial court and not for the appellate court. Tested by these standards it is quite apparent that the contention under consideration is without merit.

The record shows that the accident occurred about 8 p. m. at the intersection mentioned. Although the night was clear and the street light at the intersection was lit, there is substantial evidence produced by the plaintiff that the "intersection is not very well lighted," that is, that "that intersection is a rather dark intersection." Cortland Avenue runs generally east and west, while Coleridge Street runs generally north and south. Coleridge becomes a "blind street" at its intersection with Cortland. The streetcar runs on Cortland Avenue. The block on Cortland, before it intersects with Coleridge from the east, is a steep hill, admitted to have an 11½ per cent grade.

Plaintiff, alone in his car, just prior to the accident was driving south on Coleridge Street, towards Cortland Avenue. He stopped at the stop sign that requires Coleridge Street traffic to stop, and then started up, intending to take a left turn into Cortland. The motor of his car died as he was crossing the tracks and his automobile stalled on, and at right angles to, the tracks. At that time the defendant's streetcar, then being driven by motorman Elmer Pearson, was approaching the intersection from the east—that is, was coming down the hill. There is no doubt that the streetcar hit the stalled machine and injured plaintiff and damaged the automobile.

The plaintiff testified as to the facts of the accident and produced three eyewitnesses of the accident, two of whom were his close friends. The defendant city produced only its motorman Pearson to testify concerning the facts of the accident.

The plaintiff testified that he is a machinist, but raises birds as a hobby; that at the time of the accident he had a bird store on Mission Street, about a half mile from the scene of the accident; that he does not drink; that his automobile was a 1929 Chevrolet; that on December 24, 1944, the car had been standing in front of his store nearly all day; that he had no trouble in starting his car at the store; that he proceeded towards Cortland Avenue at a normal speed and the motor "spurted" and "spitted" along; that he stopped at the Cortland Avenue stop sign, looked and saw no traffic approaching on Cortland; that he drove upon the car tracks and his motor stalled; that he then saw the streetcar approaching down the Cortland Avenue hill at "a normal speed";

that he tried to get his motor started, and watched the streetcar; that he thought the streetcar was going to stop; that it slowed down and then "tore" into him; that the streetcar hit him, bounced back and hit him again; that the impact forced his car 40 or 50 feet along the tracks; that his automobile was stalled before he saw the streetcar; that he made no attempt to get out of his machine as the streetcar approached; that he made no signal to the motorman; that he kept stepping on his starter and "choked" the motor, but it would not start; that his lights were on, but "dimmed a little" as he stepped on the starter; that shortly after the accident, and before the ambulance or police arrived, he drove the automobile to his home and called a doctor. The plaintiff's deposition was introduced into evidence and it appears therefrom that there are several substantial inconsistencies between the deposition and his court testimony as to the time of the accident and the circumstances under which it occurred.

Nadine Shotwell was called by the plaintiff. She was unknown to the plaintiff before the accident. At the moment of impact she was standing at the intersection in question. She testified that she saw plaintiff's automobile stall on the tracks while the streetcar was "a block away"; that she was unable to estimate the speed of the streetcar as it proceeded down the hill; that the headlights on both the streetcar and automobile were lit; that she stood beside the automobile as she gave her name to plaintiff after the accident and that she detected no liquor on his breath.

Mr. and Mrs. Honnen also testified for the plaintiff. They were close friends of the plaintiff, had visited his bird store on the afternoon in question, and Mrs. Honnen had remained at the store for several hours prior to the accident while her husband had their car repaired. Both testified that plaintiff had nothing intoxicating to drink prior to the accident; that they remained with the plaintiff at the store until about 8 p. m.; that they then accepted an invitation from plaintiff to have dinner with him at his home; that they agreed to follow plaintiff in their automobile, and did so; that the lights on plaintiff's car were lit; that plaintiff stopped at the stop sign, started up and then stalled on the streetcar tracks. Mrs. Honnen testified that at that time the streetcar was coming down the hill at a rather slow rate of speed; that when the streetcar almost reached the bottom of the hill "it started up with a spurt, and it hit him and then bounced

back [and hit him] a second time''; that the streetcar pushed the automobile across the width of the street. The testimony of Mr. Honnen was substantially similar to that of his wife.

That fairly summarizes plaintiff's evidence as to the facts of the accident. As already pointed out, the only eyewitness produced by the defendant was the motorman of the street-car who was not working for the city at the time of trial. His testimony materially contradicts that of plaintiff and his witnesses. He testified that he had operated a streetcar on the Cortland Avenue run for about two months prior to the accident; that on the night in question he proceeded down the Cortland hill at about 10 miles per hour; that the head-light on his streetcar was lit; that he first saw the automobile on the tracks when the streetcar was about 30 or 40 feet from Coleridge; that he did not know when the automobile first got on the tracks, but that he was positive that the plaintiff's automobile had no lights lit; that he saw this object on the tracks and applied the brakes and then "slugged" (i. e., reversed) the car; that the wheels of the streetcar locked and the streetcar slid into plaintiff; that the intersection was dark; that when he first observed the automobile on the tracks he could not tell what it was; that the mechanism and brakes of the streetcar were working properly; that the force of the impact pushed the automobile about 8 or 10 feet; that the only damage to the streetcar was a bent fender which he removed; that after the accident he came over to where plaintiff was sitting in his automobile and spoke to him and plaintiff told him that he had hurt his shoulder; that he could "smell" alcohol on the breath of plaintiff; that shortly thereafter, and before the police or ambulance arrived, plaintiff drove away in his automobile.

Appellant urges that this evidence, as a matter of law, and without conflict, demonstrates that the accident was solely and proximately caused by the negligence of the motorman. To so contend is to disregard the conflicts in the evidence. While the evidence of plaintiff and his witnesses places plaintiff's automobile with its lights lit on the tracks while the streetcar was a ''block'' away, and has the streetcar running into the stalled automobile after proceeding this most appreciable distance, the evidence of defendant and the reasonable inferences therefrom is quite different. The motorman did not see the stalled car until he was but 30 or 40 feet from the intersection. That raises the permissible inference

that the automobile was not there until the streetcar was that close. The motorman was most positive that the headlights on the automobile were not lit. He smelled alcohol on plaintiff's breath. Thus, if this testimony is to be believed, we have plaintiff approaching this admittedly dark intersection without lights at night, after having partaken of an alcoholic drink, and becoming stalled on the tracks while the streetcar was but 30 or 40 feet away. There was no evidence of excessive speed on the part of the streetcar. Its brakes were in good condition. It is a permissible inference that the motorman discovered the automobile as soon as reasonably could be expected, and did everything possible to avoid the accident. Under such circumstances the jury could have disbelieved plaintiff's witnesses and thus have found that plaintiff had failed to prove negligence on the part of defendant, or it could have found that defendant was not negligent, or, that, even if defendant were negligent, plaintiff was contributively negligent. All three theories are supported by the evidence.

Plaintiff urges that it was error to have instructed the jury on the issue of contributory negligence, because, so it is urged, "there was no evidence from which it was possible to even infer neglect on the plaintiff's part." (App. Op. Br., p. 22.) From what has already been said, particularly about the evidence that the automobile had no lights, that plaintiff made no effort to leave the automobile or signal the motorman, and the evidence concerning the distances involved, it is quite clear that the issue of contributory negligence was properly submitted to the jury. It should also be pointed out that the record does not disclose at whose request the trial court gave the contributory negligence instructions. Under such circumstances it is presumed that they were given at the request of appellant. (*Deevy* v. *Tassi*, 21 Cal.2d 109 [130 P.2d 389].) Moreover, the record shows that plaintiff requested several instructions on that subject which were refused. This demonstrates that plaintiff invited the error (even if there were error, which there was not) and cannot complain. (See cases collected 2 Cal.Jur. p. 848, § 497.)

Plaintiff devotes the balance of his brief to an attack on the instructions. He objects to an instruction that told the jury that "a streetcar operated upon rails has not the exclusive right to occupy the streets for its own tracks, but

it has a prior right in the sense of preferential right to that part or portion of a street upon which its rails are laid. It can only move on two rails and in a direct line. It cannot turn to either side to avoid a collision in front. It has a right to proceed in the use of its tracks upon the assumption that an approaching automobile will take heed of the known hazards of such a place.''

It is the thought of plaintiff that even though this instruction ''might be abstractly correct in a right of way intersection collision, it was inapplicable to the facts of this case. No one has a right of way over a disabled vehicle if he sees it in time to stop.'' (App.Op.Br., p. 18.) It seems to be the thought of plaintiff that this instruction told the jury that, even though plaintiff's automobile was clearly stalled on the tracks, the streetcar had the right of way and a positive right to plow into the stalled machine. The instruction cannot be so interpreted. It should be noted that the court also specifically instructed that: ''Every person must exercise reasonable care,'' and that ''it was the duty of the motorman in charge of the streetcar to be vigilant at all times in order to avoid colliding with persons or property in the path of the streetcar, and if the motorman failed to exercise such vigilance under the circumstances involved in this case, then he was guilty of negligence.'' ■ While, of course, free vehicles using the highway must yield the right of way to streetcars running on fixed tracks (*O'Connor* v. *United Railroads*, 168 Cal. 43 [141 P. 809]), that right of the streetcar is not absolute. The rights of a streetcar, and of a free vehicle at an intersection, are reciprocal, and each owes to the other the duty of properly observing the other's right to use the public streets, keeping in mind that the streetcar runs on fixed tracks. (*Primm* v. *Market Street Ry. Co.*, 56 Cal.App. 2d 480 [132 P.2d 482]; *Reilly* v. *California Street Cable R. R. Co.*, 76 Cal.App.2d 620 [173 P.2d 872]; *Vincent* v. *Los Angeles Transit Lines*, 81 Cal.App.2d 195 [183 P.2d 713].) When the instructions are read as a whole, that is exactly what the jury was told.

■ Plaintiff requested, and the trial court refused to give, the following instruction: ''It is no defense to the City and County of San Francisco in this action that its officers were doing the best they could under the circumstances. The duty of operating with safe equipment and through properly trained and careful servants was an absolute duty which the

City and County of San Francisco took upon itself, and the failure to discharge this duty cannot be excused merely because of difficulties due to war time conditions or otherwise."

The refusal to give this instruction is assigned as error for the reason that the trial judge, while generally examining the prospective jurors as to their qualifications, made the following general observation: "I spoke of the present discomforts that all of us endure at times as the result of necessity, in riding in our streetcars. Would the fact that our street railway system—part of it at least has been only recently taken over by the City and County of San Francisco, and by reason of lack of funds and other possible obstructions, the City has been unable to bring the system to a state of approaching perfection. Would that fact influence your minds in deciding this case?"

Plaintiff contends that from this statement the jury could infer that the city, even if negligent, was not liable, if conditions of operation were difficult, and the city was doing the best it could, and argues correctly that negligence may not thus be excused. For this reason, says plaintiff, the requested instruction should have been given to define properly the defendant's measure of responsibility. The language used by the trial judge on the *voir dire* examination is not reasonably susceptible of the construction contended for by plaintiff. It merely asked the prospective jurors if the fact that the city had been unable to bring the railroad "to a state of approaching perfection" would prejudice them—in other words, whether the prospective jurors had any general prejudice against the city for the failure to carry out certain promises of improvement. When it came to instructing the jury, the trial judge was most careful to define the proper measure of responsibility of defendant. The jury was told that the city and the motorman were required to exercise ordinary care; that the negligence of the motorman, if any, was the negligence of the city; that it was the duty of the motorman "to be vigilant at all times in order to avoid colliding with persons or property in the path of the streetcar"; and that if the motorman failed to exercise such vigilance he was guilty of negligence. It is quite clear that the jury was fully and fairly instructed on the issue, and that the jury could not have been misled by the general statement above quoted.

█ Plaintiff complains of the refusal to give a requested

instruction embodying the rule of law contained in section 540 of the Vehicle Code. That section requires a driver of an automobile intending to turn left at an intersection to drive to the center of the intersection unless otherwise directed by buttons, markers or signs. The proposed instruction, which in addition to setting forth the rule contained in this section, stated that plaintiff was required under this section to cross the center line of Cortland Avenue before turning left, while containing a correct statement of law, has no special applicability to the facts. No one at any time during the trial challenged plaintiff's right to start across the tracks as he did. It was never contended that the stalling of his automobile on the tracks was in any way due to the fact that he was crossing the tracks at right angles rather than at an angle of lesser degree. He had a legal right to turn left, and that required him to cross the streetcar tracks. The fact that he was proceeding in accordance with section 540 of the Vehicle Code was totally immaterial to the issues involved, and it was not error to refuse to instruct on such issue.

Error is next assigned in that the trial court refused to give the following requested instruction: ''You are instructed that it was the duty of the motorman in operating the streetcar down the hill toward the corner where this accident occurred, to keep his streetcar in such control as would enable him to stop at any time to avoid injury to persons or property lawfully upon the highway, and if the motorman failed in this duty then the defendant, City and County of San Francisco, was guilty of negligence.'' Plaintiff maintains that the court's charge on negligence was general and that it should have been particularized enough to include plaintiff's theory that it was the duty of the motorman to stop when he discovered plaintiff's automobile stalled on the tracks. The proffered instruction was properly refused because it does not correctly state the law. It was not the legal duty of the motorman to operate and control his streetcar so as to ''enable him to stop at any time to avoid injury to persons or property lawfully upon the highway.'' If such were the law it would be the duty of a motorman, proceeding carefully, to stop regardless of the time at which the person or property came upon the tracks. Negligence cannot be based upon such an exacting formula completely divorced from the variables of time, place and surrounding circumstances. The instruction, containing as it does an incor-

rect statement of law, was properly refused. (*Hart* v. *Farris*, 218 Cal. 69 [21 P.2d 432] ; *Paine* v. *Bank of Ceres*, 59 Cal.App.2d 242 [138 P.2d 396] ; see cases collected 24 Cal. Jur. p. 802, § 77; 10 Cal.Jur. 10-Yr.Supp., p. 690, § 77.)

There is some merit in the next contention of plaintiff. He urges that it was error to have refused to give the following requested instruction : "You are instructed that it was the duty of the City and County of San Francisco to have and keep its streetcars in a reasonably fit condition for use upon the tracks, and if it failed to have and keep the streetcar involved in this accident in a reasonably fit and safe condition to be operated at the time and place and under the circumstances shown by the evidence, then it was guilty of negligence."

We agree with plaintiff that the jury could have inferred that the streetcar's braking system was defective, even though the only affirmative evidence in the record was that it was in good condition. The circumstances of the accident, as testified to by the plaintiff and his witnesses, raises the permissible inference that the braking system of the streetcar failed. There is, therefore, some evidentiary support for the giving of this instruction, and it could well have been given. However, the failure to give this instruction, under the circumstances, was not reversible error. The jury was fully and fairly instructed that it was the duty of the city to use ordinary care in the operation of its cars so as to avoid collisions with other vehicles. This instruction, while not as specific as the one requested, covered the field. Under such circumstances it was not error to refuse to give a more definite instruction. (*Linforth* v. *S. F. Gas & Electric Co.*, 156 Cal. 58 [103 P. 320, 19 Ann.Cas. 1230] ; *De Fries* v. *Market St. Ry. Co.*, 31 Cal.App.2d 463 [88 P.2d 256].)

The last contention of plaintiff is that it was error to refuse to give the following requested instruction : "If you find from the evidence in this case that the streetcar was approaching the automobile of the plaintiff at a time when the automobile was stalled on the tracks and that the streetcar began to slow down as it approached the intersection, and that the plaintiff believed that the streetcar motorman was stopping the same and that a reasonably prudent man under the circumstances would have believed from the way in which the streetcar was being operated that the motorman was intending and able to stop it before it collided with the

plaintiff's automobile, then the plaintiff would not be guilty of contributory negligence merely because he did not leave his stalled automobile sooner, if you believe that under the circumstances a reasonably prudent man would have acted as plaintiff did.''

It will be noted that this instruction involves generally the doctrine of contributory negligence, on which doctrine the jury was fully, fairly and properly instructed. Moreover, the court gave a proper instruction on the so-called doctrine of imminent peril. These instructions properly and adequately covered the issue and plaintiff was not entitled to more specific instructions, particularly to one that amounted to a directed verdict on the issue involved.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.