[Civ. No. 14598.   First Dist., Div. Two.   June 25, 1951.]

JOHN M. AULT et al., Appellants, v. ROSS GENERAL HOSPITAL (a Corporation), Respondent.

Lawrence A. Cowen for Appellants.

Gardiner & Riede for Respondent.

DOOLING, J.—Plaintiff, Mrs. Ault (hereinafter called the patient), and her husband sued defendant hospital for injuries received by the patient when she fell while getting

out of bed at night in an unlighted room in the hospital. The trial before a jury resulted in a verdict for defendant and plaintiffs appeal from the judgment entered thereon.

The patient had been admitted to undergo an operation for cataracts on her eyes. Her physician gave the hospital no instructions that they should exercise any unusual precautions with the patient. There is evidence that a nurse's aid had shown the patient the call button pinned to the sheet beside her pillow, and had instructed her to stay in bed and to use the call light if she needed anything in the night. There was an electric light at the head of the bed operated by a pull-chain. The patient's own physician testified that while the patient's eyesight was greatly impaired "she identified a letter six inches in height at a distance of about 15 feet." In a lighted room he would expect her to see a stool that was under a bed at a distance in excess of 6 feet. During the night, without using the call bell or turning on the light, the patient started to get out of bed in the darkness. She put down her right foot upon an object which felt like a stool. She determined that it was a stool because she felt that it was higher than the floor. "Q. So that I may follow your testimony a little better, is it true that you placed your right foot on this object, and while you were attempting to put your left foot on the floor, it threw you? A. That is right." These stools were ordinarily kept under the bed "because we bump them in the dark otherwise." Many of the facts above recited were contradicted by other testimony but, following the familiar rule, those most favorable to the judgment must be accepted on appeal.

These facts presented both defendant's negligence and the patient's contributory negligence as questions for the jury's determination. Whether it was contributory negligence for the patient to attempt to get out of bed in the darkness in a strange hospital room, and whether after her right foot rested on an object which felt like a stool it was contributory negligence to place her weight on this unfamiliar object while attempting to put her left foot on the floor presented jury questions. Whether it was negligence to leave the stool at the side of the bed when the stool would be visible to the patient if the room was lighted, and after instructing the patient not to get out of bed but to press the call button if she needed anything in the night, was equally a question for the jury. Appellants say in their opening brief: "Obviously, the presence of the stools or benches in the room to which she was

assigned was a menace to her safety in her known eye condition." When the patient undertook to get out of bed in the darkness her eye condition became immaterial, and from her own physician's testimony if the room had been lighted he would have expected her to see the stool.

Appellants complain of two instructions given at defendant's request. One, which is typical of both, was in the exact language of the rule governing the duty of care owing by hospitals to their patients quoted from 41 Corpus Juris Secundum, section 8(3), p. 349, in *Wood* v. *Samaritan Institution, Inc.*, 26 Cal.2d 847, 851-852 [161 P.2d 556] and *Rice* v. *California Lutheran Hospital*, 27 Cal.2d 296, 299 [163 P.2d 860]. We are bound to accept, as was the trial judge, a rule of law so recently expressly announced and reiterated by the Supreme Court.

Appellants, however, object on two grounds to the following sentence:

"The measure of a duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking."

They say that the reference to "hospitals generally in that community" was misleading and confusing to the jury because there was no evidence of the practice or standards in hospitals generally in the community. If there is any merit in this criticism it is not open to appellants because at their request the court gave an instruction containing these words: "The standard or reasonable care required by law is the degree of care and diligence used by hospitals generally, in this locality."

An appellant cannot complaint of an instruction given at the respondent's request when he requested a similar instruction. (*Warren* v. *City of Los Angeles*, 91 Cal.App.2d 678, 683 [205 P.2d 719]; *Blythe* v. *City & County of San Francisco*, 83 Cal.App.2d 125, 132 [188 P.2d 40]; *Benton* v. *Douglas*, 82 Cal.App.2d 784, 787 [187 P.2d 469]; *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 94 [172 P.2d 725]; 24 Cal.Jur. 870.)

Appellants also object to the words "required by the express or implied contract," saying: "There was no evidence whatever in the record to guide or chart the jury to affix this part of the instruction to anything." As respondent points out the arrangements made by the physician with respondent for the reception and care of the patient were testi-

fied to by the physician and the incidents surrounding the reception of the patient into the hospital were also in evidence.

Appellants also complain of the failure to give two instructions requested by them concerning the hospital's duty. The instructions given adequately covered that subject and a party is not entitled to have an instruction couched in any particular language so long as the instructions as a whole substantially inform the jury of the applicable rules of law. (24 Cal.Jur. 806-810.)

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.